UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ROBERT D. LYNN,

Plaintiff,

**COMPLAINT**

-against-

TOWN OF CLARKSTOWN, NEW YORK;
TOWN BOARD OF THE TOWN OF
CLARKSTOWN; MICHAEL SULLIVAN,
Individually, and as Chief of Police for the Town of
Clarkstown, New York; and JOHN AND JANE
DOES "1-10" being persons known to the
Plaintiff at this time,

16-CV-_____ (      )

**JURY TRIAL DEMANDED**

Defendants.
------------------------------------------------------------------X

Plaintiff, ROBERT D. LYNN, by and through his attorneys, FEERICK LYNCH MacCARTNEY & NUGENT, PLLC, complaining of the Defendants herein, respectfully alleges upon information and belief as follows:

<u>NATURE OF THIS ACTION</u>

1.      Plaintiff commences this action for declaratory relief, injunctive relief, and compensatory and punitive damages pursuant to 42 U.S.C. § 1983, to redress Defendants' deprivation of rights, privileges and immunities secured to Plaintiff by the First Amendment to the Constitution of the United States; all related provisions of the New York State Constitution; New York Civil Service Law § 107, *et seq.*; New York Labor Law § 201-d, *et seq.,* arising, more particularly, out of Defendants' deprivation of Plaintiff's vested statutory disability benefits afforded to police officers injured in the line of duty under New York General Municipal Law § 207-c which culminated when Defendants changed the date of Plaintiff's retirement from

August 2, 2014 to August 31, 2013, thereby depriving Plaintiff of vested statutory disability benefits, privileges, and service time.

2.     For years, the Defendants have engaged in a pattern of purposeful delay aimed directly at preventing Plaintiff from receiving what is due to him by law. That pattern of activity was part of an effort and scheme to prevent Town of Clarkstown Police Officers from receiving statutory disability benefits afforded to police officers injured in the line of duty, pursuant to New York General Municipal Law ("GML") § 207-c and benefits afforded pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, as amended. The pattern of activity, practice, and policy specifically targeted those police officers like Plaintiff who were union members of the local Patrolmen's Benevolent Association ("PBA") and who spoke out against the Defendants' activities and mistreatment.

3.     Even after two New York State Supreme Court Justices determined that the Defendants' determinations were "arbitrary and capricious" and the Appellate Division, Second Department, affirmed those Decisions and the Court of Appeals refused to entertain further appeal, the Defendants remain intent in harming Plaintiff, continuing the purposeless delay, and acting in an "arbitrary and capricious" manner.

4.     In the two prior State Court litigations, issues associated with injuries Plaintiff sustained in the line of duty on July 3, 2012 and October 16, 2012 were addressed and the Defendants' wrongful denial of Plaintiff's statutory disability benefits afforded to police officers injured in the line of duty under GML § 207-c resolved.

5.     On each prior occasion, this Court, acting through two different New York State Supreme Court Justices, overturned the Defendants' determinations as "arbitrary and capricious".

6.     Notwithstanding the two State Court victories, the benefit of the relief awarded in the trial court was denied to Plaintiff when Defendants appealed and refused to award benefits, claiming that a stay pending appeal accorded municipalities under CPLR § 5519 protected Defendants from having to award benefits.  On appeal to the Appellate Division, Second Department, the Court rulings were upheld, and the New York State Court of Appeals subsequently refused to entertain them on further appeal sought by Defendants.  Throughout the process, the Defendants refused to provide Plaintiff the statutory disability benefits afforded to police officers injured in the line of duty under GML § 207-c or provide him a reasonable accommodation.  Defendants did the opposite of accommodate.

7.     Throughout the entirety of the process, whenever Plaintiff missed work, Defendants charged time against Plaintiff's substantial accrued leave time balances.

8.     Even after the Court's rulings were upheld on appeal to the Appellate Division, Second Department, and by the Court of Appeals, which refused to entertain the controversy, Defendants persisted and refused to provide Plaintiff the full salary or wages to which he was entitled or to restore his leave time balances.

9.     On August 31, 2013, during the course of the State Court litigations and on a date when the municipal stay was in effect and when Defendants persisted in their refusal to provide Plaintiff the statutory disability benefits afforded to police officers injured in the line of duty under GML § 207-c or provide him a reasonable accommodation, Defendants removed Plaintiff from payroll and informed him that he would be responsible for the cost of his own and his family's medical benefits, which was an event that had not occurred during the prior three decades; namely, taking a police officer off payroll while a GML § 207-c case was ongoing.

10.    In essence, Defendants employed a bullying tactic and attempted to "starve" Plaintiff out to force his retirement before Plaintiff could exhaust his remedies, by consuming all of his accrued leave time balances.

11.    As a result, during the course of the State Court litigations, and due to being disabled and receiving no pay or benefits, on or about July 12, 2014, Plaintiff was compelled to file an application for a service retirement, a date when the municipal stay was in effect and when Defendants persisted in their refusal to provide Plaintiff the statutory disability benefits afforded to police officers injured in the line of duty under GML § 207-c or provide him a reasonable accommodation.

12.    On August 2, 2014, Plaintiff was granted a service retirement and the event was recorded in the Defendants' personnel and payroll records.

13.    On or about February 23, 2016, after the stay pending appeal was lifted, upon the New York State Court of Appeals' refusal to entertain the Defendants' appeals, Plaintiff made a demand for payment of the statutory disability benefits wrongfully withheld from him, in the hopes of settling the dispute without additional litigation.

14.    On or about May 27, 2016, after an exchange of correspondence between Plaintiff's counsel and Defendants' counsel failed to resolve the dispute, Defendants changed their personnel and payroll records from showing a retirement on August 2, 2014, to showing an earlier retirement date on August 31, 2013, when Plaintiff had not retired and had been illegally removed from payroll, and proposed tendering partial payment of the benefits due to Plaintiff, and threatened to withhold a sizable amount of money from him.

15.    The change in personnel and payroll records was made without Plaintiff's permission and without providing Plaintiff notice or an opportunity to be heard.

16.     On or about June 10, 2016, Plaintiff commenced a special proceeding against Defendants in the New York State Supreme Court seeking to:  (1) compel the Respondents to amend their personnel records to reflect that Petitioner was a permanent member of the Town of Clarkstown Police Department until August 2, 2014, when he was granted a New York State retirement, under § 384-a of the Retirement and Social Security Law; (2) compel the Respondents to restore to Petitioner all leave time taken from him since the dates he was injured in the line of duty; (3) compel the Respondents to pay the full amount of Petitioner's regular salary and leave time, with accrued interest and without setoff, for the entire period of his disability arising from his line of duty injury until the date his retirement was granted on August 2, 2014; (4) compel the Respondents to take such actions within ten days of the date of entry of any Judgment or Order herein; and (5) such other and further relief as the State Court deemed just, proper and equitable.

17.     After service of Plaintiff's Article 78 pleading and before answering, Defendants followed through on their proposal to make a partial payment and acted on the threat to withhold a sizable amount of money from Plaintiff.

18.     To date, Defendants have not corrected the pre-dating of Plaintiff's personnel and payroll records to reflect the actual retirement date of August 2, 2014, Plaintiff has not received the full salary and benefits owed him under GML § 207-c and the State Court rulings, and the Article 78 proceeding remains pending.

19.     Accordingly, this action is brought complaining of discrimination and retaliation under 42 U.S.C. § 1983, as well as claims pursuant to New York Civil Service Law § 209-a for interference with Plaintiff's participation in the PBA and pursuant to New York Labor Law

§ 201-d(2)(d) with regard to his alleged constructive discharge, together with such other and further relief as this Court deems just, proper and equitable.

**THE PARTIES**

20.  At all relevant times, Plaintiff Robert D. Lynn ("Plaintiff" or "Lynn") was and is a resident of the Town of Clarkstown, County of Rockland, State of New York.

21.  At all relevant times, Plaintiff was employed as a permanent, tenured, and sworn police officer in the Police Department of the Defendant Town of Clarkstown, New York, holding the rank of Patrolman.

22.  On April 1, 1985, Plaintiff was hired by Defendants in the Town of Clarkstown Police Department (the "Police Department" or "Department").

23.  Prior to April 1, 1985, Plaintiff was employed by the New York City Police Department.

24.  At all times since April 1, 1985, Plaintiff has been a member of the New York State and Local Retirement System.

25.  At all times herein, Defendant Town of Clarkstown (the "Town") was and is a municipal entity duly organized and existing under the laws of the State of New York, with a principal place of business located at 10 Maple Avenue, New City, Town of Clarkstown, County of Rockland, State of New York, organized pursuant to the laws of the State of New York with the authority to sue and be sued, and was, at all times relevant times herein, acting under color of law.

26.  At all times herein, Defendant Town was and is a municipal entity employing police officers in such numbers as to be the largest town police employer in the State of New York (i.e., approximately 165 sworn police officers and approximately 200 total employees).

6

27.     Defendant Town maintains its own Police Department and is responsible for all of the affairs of the Department, its employment decisions and determinations, and its personnel, including, but not limited to, Plaintiff.

28.     Defendant Town Board of the Town (the "Town Board"), is a public body established, organized and authorized pursuant to New York State Law with the authority to sue and be sued, and was, at all times relevant herein, acting under color of law.

29.     Defendant Town also acts through Defendant Town Board as the Police Commission.   The former Police Commission was disbanded in favor of the Town Board directly performing the role of the Police Commission.   Each Town Board member serves as a Police Commissioner on the Police Commission.

30.     Defendant Michael Sullivan ("Sullivan") is the duly appointed Chief of Police of the Defendant Town.   Defendant Sullivan possessed the power to do more than just carry out the personnel decisions of others in the employ of the Defendant Town.   Defendant Sullivan is a policy and practice maker.   Defendant Sullivan made the ultimate "arbitrary and capricious" decisions to deny Plaintiff statutory disability benefits under GML § 207-c.   Defendant Sullivan participates in and/or makes the decisions to remove from salary and/or terminate and/or discipline police officers.

31.     Defendant Sullivan is the Police Department official who administers and/or oversees matters of grievance, discipline and disability.

32.     Plaintiff Robert Lynn was, at all times relevant, a member of the Rockland County Patrolmen's Benevolent Association, Inc. for the Clarkstown Police Department (the "PBA"), and bound by and a beneficiary of a Collective Bargaining Agreement entered into by and between the Town and the Police Union.

## JURISDICTION AND VENUE

33.     This is a civil action brought pursuant to 42 U.S.C. § 1983 to redress Defendants' deprivation of rights, privileges and immunities secured to Plaintiff by the First Amendment to the Constitution of the United States; all related provisions of the New York State Constitution; New York Civil Service Law § 107, *et seq.*; New York Labor Law § 201-d, *et seq.*, which also contains any other cause of action which can be inferred from the facts set forth herein.

34.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, 1367, and 2201.

35.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391.

## BACKGROUND FACTS

### A.     Plaintiff's Employment History

36.     On or about January 4, 1984, Plaintiff was hired as a Police Officer by the New York City Police Department and duly qualified for service via physical fitness testing and academic testing at the New York City Police Academy and was granted a permanent assignment in the Police Department.

37.     On or about April 1, 1985, Plaintiff was hired as a Police Officer by the Defendant Town and granted a permanent assignment in the Police Department, which assignment was continuous and without interruption until August 2, 2014, when Plaintiff's application for service retirement was granted.

38.     Upon becoming a Town Police Officer, Plaintiff was enrolled as a member of the PBA, which bargaining unit operates under the purview of the PBA.  The employment or labor

relationship between the Police Union and the Town is governed, in part, by the terms of a Collective Bargaining Agreement ("CBA").

39.     Plaintiff has dutifully performed his job at all relevant times.  He has made numerous arrests.  He is a Firearms Instructor and holds Level One Certification/Hazmat Certification.  He has served as a Commercial Vehicle Court representative.

40.     Plaintiff has delivered two babies while on the job.

41.     During his service career, Plaintiff has received the Meritorious Police Service Award, Excellent Police Duty Award, a Lifesavings Award, and numerous service achievement-related acknowledgments.  Plaintiff has had an exemplary career.

42.     Throughout Plaintiff's service career, Plaintiff has had an exemplary attendance record and accumulated a large balance of leave time prior to the injuries detailed below.

**B.     Plaintiff's PBA Involvement**

43.     In 2009-2010, Defendants initiated a policy and practice of denying and/or depriving police officers injured in the line of duty statutory disability benefits afforded pursuant to New York GML § 207-c.

44.     At the time of the initiative, 17 to 20 police officers employed at the Town of Clarkstown Police Department were out of work on § 207-c status and Defendants desired to return those officers to work or force them into retirement.

45.     At the time of the initiative, Defendants had a policy and practice of accommodating police officers who had sustained permanent injuries by affording them light duty assignments until their retirement applications could be processed and approved by the NYS Retirement System.

46.     Since the time of the initiative, Defendants denied or deprived police officers injured in the line of duty statutory disability benefits afforded pursuant to New York GML § 207-c, and refused police officers who spoke out about the initiative reasonable accommodations in the form of light duty assignments until their retirement applications could be processed and granted by the NYS Retirement System.

47.     Since the date of the initiative, Plaintiff spoke out publicly at a PBA meeting attended by members of the Defendants' Police Administration against the initiative and in favor of the rights of officers whose statutory disability benefits were being denied and withheld and being forced into retirement.

48.     Prior to the date of Plaintiff's injuries detailed below, Chief Sullivan was aware that Plaintiff was among those police officers who were members of the PBA who spoke out against the Defendants' initiative.

49.     Following the injuries detailed below, on or about November 7, 2013, Plaintiff also spoke out publicly at a PBA meeting attended by members of the Defendants' Police Administration against the initiative and in favor of the rights of officers whose statutory disability benefits were being denied and withheld and being forced into retirement and made a motion to provide financing for other PBA members' legal issues with Defendant Sullivan concerning the GML § 207-c process and proceedings, which angered Chief Sullivan.

C.     **Plaintiff's July 3, 2012 Line-of-Duty Injury**

50.     On July 3, 2012, Plaintiff injured his right arm in the performance of his duties as a Town Police Officer.  At about 10:15 a.m., in the middle of his shift and while on routine patrol within the geographical confines of his assigned sector, Plaintiff stopped at 621 Corporate Way, Valley Cottage, New York, tripped on debris, and fell into the back of a parked tractor

trailer, striking his right elbow and biceps on the rear left bumper.  In the fall, Plaintiff injured his arm, suffering, *inter alia*, a complete tear of the distal biceps tendon.

51.     Plaintiff's daughter, Kara Donahue, who was a Town of Clarkstown Police Officer assigned to and serving the neighboring sector that morning, responded and transported Plaintiff to Nyack Hospital.

52.     At Nyack Hospital, Plaintiff was informed by the emergency room staff that it appeared he had sustained a complete tear of his biceps, as the muscle has recoiled and rolled up. It was visible to Plaintiff's untrained eye.  Plaintiff's daughter, Kara, reported the same thing to her superiors.  And, Town of Clarkstown Sergeant McCormick, who responded to the emergency room and observed the Plaintiff's physical condition, told the Plaintiff that he believed that the Plaintiff had a torn biceps.

53.     While Plaintiff was at Nyack Hospital, Sgt. McCormack also filled out various police reports detailing that Plaintiff tripped on debris and, as a result of tripping, fell into the back of a parked tractor trailer, and struck his right elbow and biceps on the trailer's rear left bumper, sustaining injury.

54.     The extent of the injury to the right arm was later revealed to include a complete tear of the distal biceps tendon.

55.     Based on having sustained an injury in the performance of his duties, Plaintiff requested that Defendants provide him with benefits under GML § 207-c for the time he was required to be absent from work due to his injury.

56.     On July 16, 2012, Plaintiff underwent surgery to repair the torn biceps tendon that he had sustained in the fall.

57.     As a result of the injury and his ensuing treatment and care, Plaintiff was not able to perform his duties as a Police Officer and remained out of work from the date of injury to recuperate and rehabilitate.

D.     **Defendants Deny Plaintiff GML § 207-c Benefits**

58.     By letter dated August 14, 2012 and delivered August 24, 2012, Chief Michael Sullivan informed Plaintiff that the Town would not grant Plaintiff statutory disability benefits required by GML § 207-c.

59.     Chief Sullivan denied the request for benefits because "[Plaintiff] fell while walking back to [his] patrol vehicle after urinating outdoors."

60.     Consistent with that interpretation, Chief Sullivan determined that Plaintiff was not performing any police duty when, per his report, he fell.

61.     In the prior litigation that successfully overturned the Chief's determination[1], Town of Clarkstown Police Captain Anthony Ovchinnikoff explained some of the Chief's motivation in denying the claim, swearing, in an affidavit, that he met with Chief Sullivan and discussed Plaintiff's accident, and they concluded that, "while [Plaintiff] was working on the morning he fell, his reported injuries had not resulted from the performance of his police duties (and may not have, in fact, occurred during his tour)." This discussion, and the resulting conclusion of Chief Sullivan that the occurrence "may not have, in fact, occurred during his tour" finds no support in the Plaintiff's personal account, or any eye witness account, or any hospital records or any police records. Yet, Chief Sullivan used this determination to deny Plaintiff statutory disability benefits and to force Plaintiff to return to work on August 29, 2012, when Plaintiff was directed to return to full duty.

---

[1] The prior litigation that resulted in a ruling overturning Chief Sullivan's August 14, 2012 determination is entitled In the Matter of the Application of Robert Lynn, Plaintiff, against Town of Clarkstown and the Town of Clarkstown Police Department, Defendants, Rockland County Index No. 2381/2012.

62.    Defendant Sullivan refused to provide Plaintiff a reasonable accommodation in the form of a light duty assignment despite the fact that other officers had been given such light duty assignments.

63.    For each and every day that Plaintiff missed work, Defendants charged time to Plaintiff's accrued leave time balances.

**E.    Plaintiff's October 16, 2012 Line-of-Duty Injury**

64.    Shortly after being compelled to return to work full duty, on October 16, 2012, Plaintiff sustained another injury in the performance of his duties as a Town of Clarkstown Police Officer, when he tripped and fell and injured his right elbow, biceps, front shoulder, and back.  This time, while responding to an area of an injured animal within the geographical confines of his routine patrol, Plaintiff parked his patrol vehicle in the roadway, exited, and proceeded to direct traffic that had backed up behind the vehicle.  After the traffic was moved along, Plaintiff walked toward the injured animal to ascertain the extent of its injuries and, as he did so, Plaintiff tripped on a recessed storm drain that was covered by leaves and not readily visible.  Plaintiff lost his balance and fell against the passenger side truck of the patrol vehicle and injured his right arm, elbow, biceps, front shoulder, and back.  He hurt the same arm as injured in the July 3rd incident.

65.    This time, when Plaintiff immediately reported his injuries to Lt. Daniel Weisberg, along with the symptoms he was experiencing, such as pain and a burning sensation in his right elbow, biceps, upper shoulder, and back, he was transported to Nyack Hospital, treated, and relieved of duty.  Plaintiff had re-torn his biceps tendon.  An incident report and an employee injury report were prepared, as well as an employer report on a work-related injury.

66.     Based on having sustained an injury in the performance of his duties, Plaintiff requested Defendants provide him with benefits under GML § 207-c for the time he was required to miss work due to his injury.  The request was memorialized, in writing, on November 2, 2012.

67.     Thereafter, on November 9, 2012, the Plaintiff underwent surgery to repair the torn biceps tendon.

68.     As a result of the injury, Plaintiff was not able to perform his duties as a Police Officer and missed work from the date of injury through the date his 31-year service retirement application was granted by the New York State and Local Retirement System on August 2, 2014. (The New York State and Local Retirement System administers the Police and Fire Retirement System (the "NYS Retirement System").

**F.     Defendants Deny Plaintiff GML § 207-c Benefits for the Second Time**

69.     Despite the surgery and numerous requests for a prompt determination of his application for GLM § 207-c benefits, the Defendants refused to provide him an answer.  Every time Plaintiff asked for an answer, the Defendants would direct him to appear before a medical professional for an examination, request additional information, and delay providing a substantive response.  The charade was played out over and over again – press for a response, receive a directive, and have a decision delayed.

70.     Throughout this process, Defendants deliberately held back the medical professionals' examination reports for months and months and interfered, directly or indirectly, with the medical professions in the effort to fabricate their reports so as to articulate reasons to doubt Plaintiff's injury reports.  Plaintiff was entitled to the reports under New York State and Federal health laws.

14

71.     Plaintiff asked for copies of the medical professionals' examination reports but was denied access. And when Plaintiff remained persistent and asked for copies of the medical professionals' examination reports (but was again denied access), Plaintiff was ordered to stop asking and told by Captain Ovchinnikoff that if he called and asked for the reports ever again he would be charged with disobeying an order.

72.     For every day that Plaintiff missed work while injured, the Defendants also charged the time against Plaintiff's leave accruals that had been accumulated over Plaintiff's lengthy service career, including time spent recuperating and rehabilitating before maximum medical improvement was attained.

73.     On April 25, 2013, Chief Sullivan attended a Police Union meeting and disclosed some further motivation for his decision-making. At the meeting, Chief Sullivan addressed various issues before the Police Department, including GML § 207-c. Chief Sullivan allegedly made it known to the general membership that the Police Department would not be granting GLM § 207-c status to its injured officers and that such officers would have to fight for the GML § 207-c status in Court. Chief Sullivan also allegedly said that the current GML § 207-c policies, along with the current collective bargaining agreement, with the Police Union, were not working and the denial of 207-c benefits to injured officers would be the new policy of the Clarkstown Police Department.

74.     On May 29, 2013, after waiting for more than six months for an answer to the application for GML 207-c benefits associated with the October 16th incident, and having his leave accruals depleted day by day, Plaintiff succumbed to the economic duress the Defendants inflicted upon him and their coercion and filed an application for a disability retirement. Notice of such application was given to the Police Command.

15

75.     By letter dated May 29, 2013 and delivered on June 3, 2013, Chief Sullivan informed the Plaintiff that the Town would not pay him the benefits required by GML § 207-c. Chief Sullivan denied the request for benefits on the ground that Chief Sullivan had "conclude[ed] that [Plaintiff was] not forthcoming concerning the happening of either accident. The differing versions of how [Plaintiff was] hurt and the 'atypical' nature of the injury-causing event as reported by [Plaintiff] regarding the current claim, seriously undermine[d Plaintiff's] credibility and it [was the Chief's] determination that [Plaintiff's] claim for General Municipal Law § 207-c benefits for the injury [Plaintiff] reported on October 16, 2012, [was] denied."[2]

76.     Moreover, in November 2014, Defendants interfered with the disability retirement application by causing it to be withdrawn and necessitating and reapplication and recommencement of review.

**G.     Supreme Court Orders Defendants to Provide Benefits,
and Defendants put Plaintiff into "Limbo" Status**

77.     Plaintiff commenced separate litigations to overturn the denial of benefits associated with the July 3, 2012 injury and to overturn the denial of benefits associated with the October 16, 2012 injury.  See Footnotes 1 and 2.

78.     On July 12, 2013, the Supreme Court of the State of New York, Rockland County, (Loehr, J.) overturned the Chief's determination denying benefits for the July 3, 2012 injury, explaining, as follows:

> Here, it is undisputed that Plaintiff was on routine patrol, which is one of his police duties, when he stopped for a bathroom break and tripped while returning to his vehicle.  Plaintiff was not injured before starting work, nor after leaving work, nor even during a lunch break when "off duty".  Plaintiff did not somehow go off

---

[2] Another prior litigation involving the parties resulted in a ruling overturning Chief Sullivan's May 29, 2013 determination is entitled In the Matter of the Application of Robert Lynn, Plaintiff, against Town of Clarkstown and the Town of Clarkstown Police Department, Defendants, Rockland County Index No. 1480/2013.

duty when he took a bathroom break, but was still on duty and on patrol (*Patalano v. Nassau County*, 2010 WL 5642493 [Sup Ct, Nassau Co]; *Parker v. Village of Johnson City*, 2010 WL 2163800 [Sup Ct, Broome Co]). Accordingly, the decision to deny Plaintiff §207-c benefits was arbitrary and capricious and the Petition is granted.

79.     The Defendants took an immediate appeal and no GML § 207-c benefits were provided while the Defendants prosecuted their appeal.

80.     The proceeding involving the October 16, 2012 incident started in court long after the litigation involving the July 3, 2012 incident and was resolved at a later date.

81.     While the stay pending appeal of the July 3rd incident was effective and before the litigation involving the October 16th incident had been resolved, by letter, dated August 26, 2013, Chief Sullivan advised the Plaintiff that Plaintiff would be taken off the payroll, effective August 31, 2013, and that his medical benefits, as well as dental and vision benefits, would be terminated as of that date. The Plaintiff was being put in "administrative limbo."

82.     Thus, notwithstanding Plaintiff's victory in the Supreme Court and the Town's benefit of the automatic stay provisions of CPLR § 5519(a) pending the appeal from that Supreme Court Decision dated July 13, 2013, the Town took further adverse action against Plaintiff later that Summer in the form of a threatened deprivation of Plaintiff's benefits.

83.     Quite obviously, administrative limbo without pay or benefits presented an enormous adverse financial consequence to the Plaintiff and his family, for Plaintiff was allowed little to no time to protest the decision.

84.     More, at the time that the Plaintiff received the Town's letter of August 26, 2013, Plaintiff had already informed the Police Command that he was addressing his son's medical needs at a local hospital, as his son was then in intensive care.

85.     The Police Command had delivered the letter dated August 26, 2013 with knowledge that the Plaintiff's son was in intensive care and that there was no way to cover the costs of the care absent the Plaintiff's medical benefits, to further coerce him into a non-disability service retirement.

86.     The Plaintiff's son suffered from gastro-pariesis, a condition that led to stomach pain, emergency hospitalization and intensive care when his kidneys failed.  The costs and burden of meeting the financial obligations associated with his son's condition were insurmountable but for the medical benefits afforded to Plaintiff through his job as a police officer, which he performed admirably for decades.  Plaintiff was able to secure his son treatment, obtain a diagnosis, and participate in a plan for care developed through his medical benefits and the insurance coverage provided thereunder.  Absent Plaintiff's medical benefits and the insurance coverage provided thereunder, the Plaintiff's son predicament was severe.

87.     When the PBA heard of the Police Command's August 26, 2013 letter, and the decision to remove Plaintiff from payroll and force him to pay for his own and his family's medical benefits, pressure was placed on the Police Command to continue insurance benefits via a letter to the Police Command.

88.     Never in the prior three decades had Defendants removed a police officer from payroll or forced him to pay for medical benefits while a GML § 207-c case was pending.

89.     The Defendants partially acquiesced to the pressure and permitted the insurance to continue, but they agreed to do so only until October 31, 2013, when coverage would lapse and Plaintiff would have to carry the costs of the premiums and incidentals himself, despite Defendants refusing to pay him any salary.

18

90. In response to the PBA's protest letter, Chief Sullivan, whose Command had been wrongfully depriving Plaintiff of benefits and deducting time from his accrued leave, found it "arbitrary" to continue benefits for the Plaintiff since Plaintiff no longer had any leave accrual left from which to deduct time while he missed work.

91. In his response letter, the Chief failed to mention that he had stalled his own decision for so long that he caused the depletion of all of the Plaintiff's leave accruals before the administrative and court review processes were completed, all to further his end goal and his Command's new GML § 207-c policy; namely, the one that refused claims for benefits and required injured officers to fight for their rights in court. Indeed, in this regard, the Chief made good on his April 25, 2013 promise to the PBA. The Chief also ignored Plaintiff's court victory and the import of the Defendant Town's stay pending appeal. He even ignored his obligation to offer a reasonable accommodation. The Chief's actions were more than arbitrary and capricious; they were deliberate and malicious.

92. Shortly before October 31, 2013, the Plaintiff was forced to bring an Order to Show Cause application to continue his medical benefits while he litigated his claims and while the Defendants continued to exploit their stay pending appeal. Specifically, Plaintiff argued that the loss of medical benefits constituted irreparable harm since there was: (1) substantial risk to health, (2) severe financial hardship, (3) the inability to purchase life's necessities, and (4) anxiety associated with uncertainty. The Plaintiff cited to the holding in United Steelworkers of America v. Textron, Inc., 836 F.2d 6 (1st Cir. 1987), where United States Supreme Court Justice Breyer held, while sitting on the First Circuit, a reduction in medical care as a result of termination of benefits was irreparable injury.

93.     In arguing for an injunction preserving his medical benefits to protect himself and his family, the Plaintiff argued that the Defendants had removed Plaintiff from the list of covered employees and had notified the Plaintiff and the provider that Plaintiff will not be covered after October 31, 2013 and that he would not receive continuation coverage until he had paid the premium himself.

94.     In other words, while Defendants enjoyed a stay pending appeal, Defendants also threatened to cause a denial of benefits to Plaintiff and his family unless Plaintiff paid the premium and Defendants were not paying him any salary at that time.  The pattern of harassment thus continued.

95.     Accordingly, unless an injunction was issued ordering the Defendants to continue Plaintiff's medical benefits, by, among other things, providing premiums sufficient to secure the current guaranteed level of benefits, any reductions in medical coverage would cause (1) substantial risk to health, (2) severe financial hardship, (3) the inability to purchase life's necessities, and (4) anxiety associated with uncertainty.

96.     Only after the application was submitted, and before formally answering the application, the Defendants agreed to provide insurance coverage during the pendency of the litigation.  In other words, Defendants compelled Plaintiff to engage Counsel, at a personal expense, to secure medical benefits when Defendants refused to pay Plaintiff court-ordered benefits, and then offered the benefits and mooted the application, which prompted Plaintiff to withdraw same.

97.     Defendants did not offer to pay Plaintiff anything, not even under a reservation of rights.

98.     Defendants also interfered with Plaintiff's legal representation and subsequently secured a denial of PBA representation.   This occurred in early September 2013, when Defendants notified the PBA that Plaintiff had engaged outside counsel so as to deprive Plaintiff of representation by the PBA's counsel.  As a direct consequence, when the PBA wrote to Chief Sullivan on September 3, 2013, it was drafted and sent with the false belief that Plaintiff had engaged outside counsel to represent him.

99.     When the issue of representation was addressed before the New York State Public Employment Relations Board, Chief Sullivan informed PBA Union members not to attend the hearings, telling them that they would not be disciplined for non-compliance with agency subpoenas.  As a direct consequence, only one of the ten police officers subpoenaed to testify showed up.  Again, Defendant Sullivan's interference inflicted further financial distress upon Plaintiff.

100.    Eventually, on December 4, 2013, the Supreme Court of the State of New York, Rockland County, (Kelly, J.) overturned the May 29, 2012 determination denying benefits for the October 16, 2012 injury, explaining as follows:

> Clearly the October 16, 2012 occurred in the line of duty.  The Chief questions certain inconsistencies in the Plaintiff's version of the accident.  However, under any version of events, the October 16th accident occurred in the performance of the Plaintiff's job duties.  Therefore, the Plaintiff need only prove a causal relationship.  In this case, the Plaintiff provided medical proof of a causal relationship.
>
> *   *   *
>
> While Chief Sullivan may hold valid doubts about the exact occurrence of the accident, the Plaintiff met his burden of demonstrating an injury causally related to his work duties. Therefore, the decision denying Plaintiff benefits pursuant to GML § 207-c was arbitrary and capricious.

21

> Again, the Defendants took an immediate appeal and no statutory
> disability benefits were paid under GML § 207-c while the
> Defendants prosecuted their appeal.

**H.**   **Even the Favorable Resolution of Appeals did not Result in Payment of Benefits**

101.   The appeals took 18 months to be perfected, responded to, replied to, orally argued, and decided.

102.   On September 2, 2015, the Appellate Division, Second Department, disposed of each appeal.  With regard to the appeal pertaining to the July 3, 2012 injury, it held:

> Here, the Supreme Court properly found that the Plaintiff was
> injured in the performance of his duties, and that the denial of
> section 207-c benefits was arbitrary and capricious. Accordingly
> the Supreme Court properly granted the petition and, in effect,
> annulled the determination. (Citations omitted).

103.   With regard to the appeal pertaining to the October 16, 2012 injury, finding that:

> Here, the Supreme Court properly found that the Plaintiff was
> injured in the performance of his duties, and that the denial of
> section 207-c benefits did not have a rational basis and was
> therefore arbitrary and capricious.  Accordingly, the Supreme
> Court properly granted the petition and, in effect, annulled the
> determination.  (Citations omitted).

104.   Still, the Defendants did not grant Plaintiff the GML § 207-c benefits due under either ruling.  The Defendants attempted to seek leave to appeal to the Court of Appeals.  The Defendants submitted formal application that required the Plaintiff to oppose, with formal opposition.

105.   On February 18, 2016, both applications were denied, as follows:  "[T]he motion is denied with one hundred dollars costs and necessary reproduction disbursements."

106.   No further appeals were taken.  Accordingly, the stay pending appeal expired ten days after February 18, 2016, at a time when no GML § 207-c benefits had been paid and interest continued to accrue thereon.

107.    Accordingly, Plaintiff is entitled to GML § 207-c benefits and there is no justification for the Defendants' continued refusal to pay Plaintiff the full amount of his salary during the entire time period when Plaintiff was on § 207-c status, up to the actual day his service retirement was granted on August 2, 2014.

108.    Throughout the exhaustion of remedies, Defendants refused Plaintiff a light duty assignment including, but not limited to, that period of time detailed below when Plaintiff's service and disability retirement applications were pending.

**I.      Plaintiff Succumbs to Economic Pressure and Coercion and Actually Retires**

109.    It is worth reiterating that, on August 31, 2013, the Defendants separated Plaintiff from payroll, and effectively terminated his employment without ever telling Plaintiff he was fired as a result of his injuries.

110.    With no salary being paid for almost one year, on July 12, 2014, the Plaintiff succumbed to the economic duress the Defendants inflicted upon him and their coercion and filed an application for a service retirement, pursuant to section 384-e of the retirement and social security law.

111.    On August 2, 2014, the Plaintiff's application for a 25-year service retirement was granted without opposition and he was no longer entitled to payment of the full amount of his salary pursuant to GML § 207-c(2).

112.    Almost a year later, on May 25, 2015, the Plaintiff's separate application for a disability retirement, which had been filed on May 29, 2013 when Plaintiff's application for GML § 207-c benefits was denied, was granted.

**J.**     **GML § 207-c Benefits are Payable until the Date of Plaintiff's Actual Retirement**

113.   GML § 207-c is a remedial statute enacted for the benefit of police officers injured in the line of duty and is to be liberally construed in favor of the police officer injured in the performance of his duties.

114.   GML § 207-c(1) provides that any police officer "[w]ho is injured in the performance of his duties…so as to necessitate medical or other lawful remedial medical treatment shall be paid by the municipality…the full amount of his regular salary or wages from such employer until his disability arising therefrom has ceased."

115.   GML § 207-c(2) further provides that "[p]ayment of the full amount of regular salary or wages, as provided by subdivision one of this section, shall be **discontinued** with respect to any policeman who is permanently disabled as a result of an injury or sickness incurred or resulting from the performance of his duties **if such policeman is granted** an accidental disability retirement allowance pursuant to section three hundred sixty-three of the retirement and social security law, a retirement for disability incurred in the performance of duty allowance pursuant to section three hundred sixty-three-c of the retirement and social security law or similar accidental disability pension provided by the pension fund of which he is a member." (Emphasis added).

116.   Here, well before either of the two prior litigations concluded in a final, non-appealable judgment or order, the Plaintiff was granted a service retirement on August 2, 2014 under § 384-e of the Retirement and Social Security Law and subsequently received a disability retirement on May 25, 2015. There is no justification for withholding the full amount of his regular salary from Plaintiff for any time period prior to the date of retirement on August 2, 2014, when Plaintiff was granted a service retirement.

117.    On or about February 23, 2016, after the stay pending appeal was lifted, upon New York State Court of Appeals' refusal to entertain the Defendants' appeals, Plaintiff made a demand for payment of statutory disability benefits wrongfully withheld from him, in the hopes of settling the dispute without additional litigation.

118.    As of February 22, 2016, Plaintiff was entitled to the amounts set forth on the attached schedule of all time taken and a calculation of the back pay owed of $328,823.01 (without interest added) and interest continues to accrue at the legal rate (at $82.20 per day).

119.    On or about May 27, 2016, after an exchange of correspondence between Plaintiff's counsel and Defendants' counsel failed to resolve the dispute, Defendants changed their personnel and payroll records from showing a retirement on August 2, 2014, to showing an earlier retirement date in August 31, 2013, when Plaintiff had not retired, and proposed tendering partial payment of the benefits due to Plaintiff, and threatened to withhold a sizable amount of money from him.

120.    The change in personnel and payroll records was made without notice or opportunity to be heard given to Plaintiff.

121.    On or about June 10, 2016, Plaintiff commenced a special proceeding against Defendants in the New York State Supreme Court, in Rockland County under Index No. 862/2016, seeking to: (1) compel the Respondents to amend their personnel records to reflect that Petitioner was a permanent member of the Town of Clarkstown Police Department until August 2, 2014, when he was granted a New York State retirement, under Section 384-a of the Retirement and Social Security Law; (2) compel the Respondents to restore to Petitioner all leave time taken from him since the dates he was injured in the line of duty; (3) compel the Respondents to pay the full amount of Petitioner's regular salary and leave time, with accrued

25

interest and without setoff, for the entire period of his disability arising from his line of duty injury until the date his disability retirement was granted on August 2, 2014; (4) compel the Respondents to take such actions within ten days of the date of entry of any Judgment or Order herein; and (5) such other and further relief as the State Court deemed just, proper and equitable.

122.    On June 16, 2016, when news of this Article 78 proceeding was published in the *Journal News*, on June 16, 2016, the Town's Director of Finance Vincent Balascio acknowledged that: "This case should have never gotten this far and the actions of the prior administration and their appointees have brought us to this point." Balascio said: "They knew the case was a loser, but kept engaging in petty personality politics and lost. Now the taxpayers are on the hook for hundreds of thousands of dollars in settlements and legal fees."

123.    After service of Plaintiff's Article 78 proceeding and before answering, Defendant Sullivan stated that the reason why benefits were denied on the second injury detailed about was "because we did not believe his story and felt that we had enough facts to make our case in court. We knew it would be a difficult battle **but felt it was** the right this to do in this case."

124.    After service of Plaintiff's Article 78 pleading and before answering, Defendants followed through on their proposal to make a partial payment and acted on the threat to withhold a sizable amount of money from Plaintiff.

125.    To date, Defendants have not corrected the predating of Plaintiff's personnel and payroll records to reflect the actual retirement date of August 2, 2016 and Defendants have not paid Plaintiff the full salary and benefits owed him under GML § 207-c; Defendants have not admitted, but rather denied, liability for the balance due; and the State Court rulings and the Article 78 proceeding remains pending.

126.    Accordingly, this action is brought complaining of retaliation, as well as claims pursuant to New York Civil Service Law § 209-a for interference with Plaintiff's participation in the PBA and pursuant to New York Labor Law § 201-d(2)(d) with regard to his alleged constructive discharge, together with such other and further relief as this Court deems just, proper and equitable.

## AS AND FOR A FIRST CLAIM FOR RELIEF
## (42 U.S.C. § 1983)

127.    Plaintiff repeats and reiterates each allegation previously set forth as though fully set forth herein.

128.    By reason of the foregoing, Defendants, while acting under color of state law, retaliated against Plaintiff for:  (a) his exercise of his rights to freely associate with the PBA and individual members thereof for the purpose of engaging in constitutionally protected activity; and (b) his exercise of his rights to speak freely on matters of public concern, which are rights secured to Plaintiff by the First Amendment to the Constitution of the United States of America and Article 1, §§ 8 and 17 of the Constitution of the State of New York.

129.    Defendants are liable for the deprivation of Plaintiff's vested statutory disability benefits, rights, privileges, and service time because such acts were taken in accordance with Defendants' custom or practice of discriminating and/or retaliating against individuals based on their constitutionally-protected forms of speech, expression and association; these practices were so persistent and widespread that they constitute the constructive acquiescence of policymakers; and, the individual policymakers directly participated in and/or tacitly condoned the discrimination/retaliation to which Plaintiff was subjected, and without the process otherwise due.

## AS AND FOR A SECOND CLAIM FOR RELIEF
### (New York Civil Service Law § 209-a)

130.    Plaintiff repeats and reiterates each allegation previously set forth as though fully set forth herein.

131.    By reason of the foregoing, Defendants violated § 209-a of the New York Civil Service Law by interfering with Plaintiff's rights to belong and participate in the PBA and by discriminating against Plaintiff for the purpose of discouraging Plaintiff's membership in, and participation in the activities, of the PBA.

## AS AND FOR A THIRD CLAIM FOR RELIEF
### (New York Labor Law § 201-d(2)(d))

132.    Plaintiff repeats and reiterates each allegation previously set forth as though fully set forth herein.

133.    By reason of the foregoing, Defendants discriminated against Plaintiff in violation of § 201-d(2)(d) of the New York Labor Law in that they constructively discharged Plaintiff or otherwise discriminated against Plaintiff in the compensation, terms, conditions and privileges of employment.

## DEMAND FOR TRIAL BY JURY

134.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendants:

a.    An award of compensatory damages in the sum of $500,000.00 (Five Hundred Thousand Dollars);

b. A grant of a permanent injunction enjoining Defendants from any further actions abridging Plaintiff's rights, including, but not limited to, an injunction preventing Defendants or any of their agents or employees from providing negative, misleading, or disparaging references pertaining to Plaintiff's employment;

c. An award of punitive damages in an amount to be determined by a jury;

d. An award of reasonable attorneys' fees and expert witness fees;

e. An Order directing Defendants to pay pre-judgment and post-judgment interest, as appropriate, on all amounts due to Plaintiff as a result of this action; and

f. An Order granting such other and further relief as the Court deems just and proper.

Dated: South Nyack, New York
August 31, 2016

Respectfully submitted,

FEERICK LYNCH MacCARTNEY & NUGENT, PLLC

By:___/s/ Donald J. Feerick, Jr._____
         Donald J. Feerick, Jr. (DJF 3299)
Attorneys for Plaintiff
96 South Broadway
South Nyack, New York 10960
(845) 353-2000